IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ISAAC HENRY MCGREW, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) | 6:16-CV-00606-JO <br><br> OPINION AND ORDER |

JONES, District Judge,

Plaintiff Isaac McGrew appeals the Commissioner's decision denying his application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

McGrew applied for supplemental security income alleging he became disabled on January 1, 2010, due to borderline personality disorder and anxiety. Admin. R. 66, 79, 166, 185. He alleged these conditions caused him to have panic attacks, loss of concentration, inability to understand or follow instructions, and violent reactions when around others. Admin. R. 40, 49, 190-191.

The ALJ applied the sequential disability determination process described in 20 C.F.R. § 416.920 and *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found McGrew's ability to perform basic work activities was limited by anxiety disorder, depressive disorder, and borderline

personality disorder. Admin. R. 21. The ALJ found that, despite these impairments, McGrew retained the residual functional capacity ("RFC") to work at all levels of exertion, limited to simple, repetitive, routine tasks requiring no more than occasional interactions with supervisors, coworkers, and others. Admin. R. 24. The vocational expert ("VE") testified that a person with McGrew's age, education, work experience and RFC could perform the activities required in unskilled occupations such as janitor, woodworking machine offbearer, and laundry worker, which represent over two million, three hundred thousand jobs in the national economy. Admin. R. 29, 60. The ALJ concluded that McGrew was not disabled within the meaning of the Social Security Act. Admin. R. 29.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence, even if another interpretation is also rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039 –40 (9th Cir. 1995).

\\\

\\\

## ASSIGNMENTS OF ERROR

The plaintiff bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). McGrew contends the ALJ improperly evaluated his subjective symptoms, the opinion of examining psychologist Jennifer Metheny, Ph.D., and the lay witness statement of his former fiancée Savanna Ferguson. McGrew contends these errors led the ALJ to improperly conclude that he retained the capacity to work and was not disabled.

## DISCUSSION

### I. Subjective Symptoms

In his written application, McGrew alleged that he had a personality disorder that caused him to react to other people with excessive anger and high anxiety. Admin. R. 79-80, 166, 185. He had difficulty containing his anxiety when around others for extended periods. Admin. R. 186. He said he experienced panic attacks and urges to act with physical violence when around others. Admin. R. 190. These symptoms made it difficult for him to complete tasks or understand instructions when others are present. Admin. R. 190. At the administrative hearing, McGrew testified that he could not work because he could not be around other people without erupting in violence. Admin. R. 40-42. He would not be able to do even simple tasks, because he would start to shake and shut down. Admin. R. 50.

The ALJ believed that McGrew suffered from anxiety disorder, depression, and a borderline personality disorder with symptoms that made it difficult for him to work, particularly around other people. He found, however, that McGrew's symptoms were not so intense and persistent that they precluded him from engaging in work limited to simple, repetitive, routine tasks with only occasional interactions with others. Admin. R. 24-25.

When a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant's statements about the severity of symptoms. The ALJ is not to engage in wide-ranging scrutiny of the claimant's character, but to focus on the intensity and persistence of his symptoms. *Treviso v. Berryhill*, 862 F.3d 987, 1000 n.5 (9th Cir. 2017); Social Security Ruling (SSR) 16-3p *available at* 2016 WL 1119029 (2016).

An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's statements. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir 2008).

In making findings about the severity of subjective symptoms, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements about his symptoms. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 16-3p.

The ALJ's decision demonstrates that he performed a thorough review of all the evidence relating to proper factors for evaluating the intensity, persistence and limiting effects of McGrew's symptoms. He discussed McGrew's medical records and treatment history which showed that McGrew's symptoms improved with medication and were moderate when he maintained his treatment regimen. Admin. R. 25.

While incarcerated in June 2010, McGrew told his counselor that, although he had wanted to do his time without taking psychotropic medications, he was no longer able to go without them due to intermittent anger and anxiety. Admin. R. 25, 249. After starting medication, he began to work full time as a tutor for other inmates and performed well in that environment. Admin. R. 25, 314, 317. In April 2011, McGrew reported continuing intermittent episodes of intense anger, but these improved with a mood stabilizing medication and emotional control skills. Admin. R. 25, 307. He was able to resolve arguments with other inmates and said he felt focused and mellow. He continued to have anger impulses but maintained good control of his actions. His tutoring job continued to go well and he reported no problems with other inmates on his unit through the rest of his incarceration. Admin. R. 25, 294, 296, 297, 300, 302, 303, 305, 307, 309, 310, 311, 312, 317. McGrew was released from prison in October 2012. Admin. R. 320.

After leaving prison, McGrew did not seek mental health treatment until November 2013, when he established care with Michael Findley, M.D. McGrew told Dr. Findley he was depressed and wanted to restart psychotropic medication. Dr. Findley prescribed Seroquel. Admin. R. 25, 437-438. Two months later, McGrew established care with Options Counseling, seeking a psychiatrist to manage his medications. He was anxious and depressed and said his medication was not working. Admin. R. 26, 399-403. In January 2014, McGrew began a treatment plan of individual counseling and medication management at Options. Admin. R. 26, 397. McGrew discontinued counseling after a few sessions due to problems with transportation. Admin. R. 26, 368. He continued medication management with Charles Race, a psychiatric nurse practitioner.

Initially, Mr. Race prescribed one medication, but McGrew did not follow the prescribed dosage and then discontinued the medication on his own. In February 2014, Mr. Race changed

McGrew's prescription. In April 2014, McGrew reported marked improvement on a Brief Mood Survey and said he was very active at his job maintaining horse stables. Mr. Race added another medication to the regimen to help with focus. In May 2014, Mr. Race adjusted the medications again, changing one to an extended release version. Admin. R. 26, 371, 376-377, 385-386, 390-391. At his follow up visit in June 2014, McGrew was stable on his medications and his Mood Survey scores showed continued improvement. McGrew reported better mood and said he remained very active at his job. Admin. R. 26, 362.

In August 2014, McGrew returned to Dr. Findley for the first time since November 2013, complaining of chest pain after being in a fight with his landlord. Dr. Findley found McGrew wildly agitated. McGrew admitted he had lost one of his prescribed medications and had not been taking it for 20 days. Admin. R. 434-436. A week later, McGrew went to the emergency room after another fight. The attending doctor described him as "a fairly belligerent angry gentleman." Admin. R. 444-445. In September 2014, McGrew told Mr. Race he had been off his medications for several weeks during which he engaged in wild behavior. Admin. R. 26, 447.

The medical reports and treatment history support the ALJ's conclusion that McGrew's symptoms remain well controlled when he is compliant with an appropriate prescribed medication regimen. Admin. R. 25. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Accordingly, this evidence of medical improvement from treatment undermines McGrew's claim that his difficulties interacting with others and controlling anger impulses are so intense and persistent that he cannot work, even when he is fully compliant with treatment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th

Cir. 2012); *Morgan v. Comm'r* 169 F.3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ also considered the opinion evidence from Dr. Metheny and the state agency psychological consultants. As discussed more fully below, the ALJ properly found that Dr. Metheny's opinion reflected McGrew's condition when he was not following an appropriate treatment regimen. McGrew did not challenge the ALJ's evaluation of the state agency psychologists' opinions which were generally consistent with the ALJ's RFC assessment. Admin. R. 26-27, 74, 89.

The ALJ also noted that McGrew reported engaging in activities that were inconsistent with his subjective symptoms and his testimony. For example, McGrew testified at the hearing that, while in prison, he "stayed on my bed the whole time" and "didn't associate with anybody" because every time he did "it just seemed to erupt in violence." Admin. R. 25, 40. In fact, McGrew's counseling records reflect that he successfully worked full time tutoring other inmates and reported he was able to avoid fights and make friends by using emotion control skills learned in counseling. Admin. R. 25, 294, 299, 300, 303, 306, 307, 310, 314, 317. The record also contradicts McGrew's testimony that he had not worked or looked for work since leaving prison. Admin. R. 25, 40-41. Just before his release, McGrew told his counselor that he had a job lined up for when he got out, but intended to apply for disability benefits instead. Admin. R. 25, 67. In January 2013, after his release from prison, McGrew told Dr. Metheny that he paid his way by performing chores on the property where he was living. Admin. R. 25, 319. At his appointments with Mr. Race during 2014, McGrew consistently reported that he was very physically active at his work maintaining horse stables and 21 acres of property. Admin. R. 25, 362, 363, 376-377, 391. The ALJ reasonably found that these

work activities and McGrew's denial of any work activity during his testimony undermined the reliability of his statements about his subjective symptoms. *Molina*, 674 F.3d at 1113.

The ALJ also found that McGrew's poor work history and decision to forego the job he had lined up in favor of pursuing disability benefits suggested his presentation of subjective symptoms was partially motivated by secondary gain. Admin. R. 25. Although ALJs should not engage in wide-ranging scrutiny of a claimant's character, these considerations are valid in evaluating the reliability of a claimant's presentation of subjective symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). I find this line of reasoning relatively unpersuasive, however, because every application for disability benefits, whether meritorious or not, implicates a motivation for pecuniary gain. Such motivation, therefore, sheds little light on the merits of the claim.

Nevertheless, the ALJ's evaluation of McGrew's subjective symptoms is supported by inferences reasonably drawn from the record. His decision provides an adequate basis for the court to conclude that he did not discredit McGrew's subjective statements arbitrarily. The ALJ provided a clear and convincing explanation that is supported by the record. *Tommasetti*, 533 F.3d at 1039; *Batson*, 359 F.3d at 1193; *Thomas*, 278 F3d at 958.

## II. **Dr. Metheny's Opinion**

On January 28, 2013, Dr. Metheny performed a psychodiagnostic evaluation at the request of Disability Determination Services. McGrew told her he could not work because of "violent tendencies." Admin. R. 318. McGrew had been out of prison for four months and had not established medical or psychological treatment. He was not taking medications provided by the

prison as prescribed and he was using marijuana up to ten times a day. He appeared extremely anxious during the interview. Admin. R. 320-321.

Dr. Metheny administered a survey on which McGrew responded in a manner that suggested moderate depressive symptoms. His responses on a brief screening checklist suggested a possible PTSD diagnosis. Admin. R. 322. He did not meet the criteria for Panic Disorder, but Dr. Metheny diagnosed Anxiety Disorder, Major Depressive Disorder, Borderline Personality Disorder, and Cannabis Dependence. She did not assess any specific functional limitations. Admin. R. 323-324.

On September 29, 2014, Dr. Metheny prepared an addendum to her evaluation of January 2013. She did not interview McGrew again, but reviewed his treatment records from emergency room visits, Options Counseling, and the Department of Corrections. Admin. R. 453. Based on the records and her prior interview, Dr. Metheny provided her opinion regarding McGrew's likely functional limitations. As pertinent here, Dr. Metheny opined that McGrew would have marked impairment of the ability to interact appropriately with others in a work environment and extreme impairment when interacting with supervisors and coworkers. Admin. R. 454, 456-457.

The ALJ gave Dr. Metheny's opinion little weight in his decision. Admin. R. 27. An ALJ may reject the uncontradicted opinion of an examining doctor by providing a clear and convincing explanation that is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ did so.

The ALJ said that Dr. Metheny's opinion gave excessive weight to McGrew's self reported symptoms during periods when he was not appropriately medicated. Admin. R. 27. An ALJ may discount a physician's opinion that is premised on the claimant's subjective statements which the ALJ properly discredited. *Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885

9 - OPINION AND ORDER

F.2d 597, 605 (9th Cir. 1989). As shown in the previous section of this opinion, the ALJ properly found that McGrew's subjective statements about the severity of his symptoms did not accurately depict his functional capability when undergoing appropriate treatment.

Additionally, the ALJ correctly observed that Dr. Metheny's objective findings during the interview did not reflect McGrew's level of function while properly medicated because he had been out of prison for several months and had not established care with a new source for prescription medications. Admin. R. 27.

The ALJ also noted that the significant symptoms Dr. Metheny identified in the records she reviewed occurred while McGrew was not undergoing treatment or stable on medications. Admin. R. 27. For example, she pointed to McGrew's emergency room treatment on January 7, 2014, for suicidal ideation. Admin. R. 453. This episode occurred at about the time that McGrew first sought care with Options Counseling and had not established with a provider who could prescribe medications. Similarly, Dr. Metheny identified reported symptoms of homicidal ideation, hearing voices, and having panic sensations while in prison in January and February 2011. Admin. R. 453. These reports also coincided with a period before he had stabilized on a medication regimen. After establishing an appropriate medication regimen, these symptoms abated. Indeed, Dr. Metheny noted that "Records from his provider at the Oregon Department of Corrections suggest that he may have experienced improvement in his ability to manage anger and anxiety while on medications." Admin. R. 453.

Finally, the ALJ found that Dr. Metheny's opinion regarding marked and extreme limitations in the ability to interact with others was inconsistent with McGrew's reported activities, including social activities such as hanging out with friends, relying on friends for support, getting married, and

work-like activities such as maintaining horse stables and taking care of 21 acres of property. Admin. R. 23, 27, 47-48, 197, 319, 320, 362, 376, 391.

The ALJ's reasoning for discounting Dr. Metheny's opinion is clear and convincing and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d at 1216.

### III. Lay Witness Statement

McGrew's fiancée Savanna Ferguson provided a written third party function report in December 2012. Admin. R. 193-200. She said McGrew had a hard time being near crowds or other people, experienced high anxiety, and told her that he had suicidal and homicidal thoughts. Admin. R. 193, 198. Ms. Ferguson said McGrew "hangs out with a very few close friends" a few times a week but "does not participate in social activities." Admin. R. 197. She said McGrew had lack of concentration and did not get along with authority figures. Admin. R. 198. Ms. Ferguson concluded "Isaac McGrew is a lot less volatile when he is on his [medications], but I don't believe he is on [the] right pill or he needs a higher dosage." Admin. R. 200.

An ALJ must take into account the statements of lay witnesses unless the ALJ expressly determines to disregard such evidence and gives reasons germane to each witness for doing so. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ took into account Ms. Ferguson's statement and found it generally consistent with the treatment record, the evidence as a whole, and the RFC assessment he reached in his decision. Admin. R. 25.

The ALJ's interpretation of Ms. Fersuson's statement is supported by substantial evidence. Ms. Ferguson provided the statement at a time when McGrew was not following a prescribed medication regimen, several months after his release from prison and before he established care with

Mr. Race. This timing and Ms. Ferguson's conclusion that she did not believe McGrew was taking an adequate dosage of the proper medication reasonably support the ALJ's interpretation that Ms. Ferguson's statement described McGrew's symptoms while he was not appropriately medicated. The ALJ's interpretation is further supported by the reasoning he provided in his evaluations of McGrew's subjective symptoms and Dr. Metheny's opinion.

The ALJ considered the lay witness statement and showed that his interpretation of that evidence was based on rational inferences drawn from the evidence in the record. To the extent the ALJ disregarded any part of the lay witness statements, his decision provided adequate reasoning for doing so. *Valentine*, 574 F.3d at 694; *Lewis*, 236 F.3d at 511.

### IV. Step Five Determination

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the functional limitations of the claimant can perform. *Yuckert*, 482 US at 141-42; 20 C.F.R. §416.920(g). The ALJ can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043. Here the ALJ elicited testimony based on hypothetical assumptions reflecting the limitations in McGrew's RFC assessment. Admin. R. 59-60.

McGrew contends the hypothetical assumptions did not accurately reflect all of his limitations because the ALJ did not include limitations from Dr. Metheny's opinion. The ALJ properly evaluated Dr. Metheny's opinion and the record as a whole and included the limitations he found supported by the record. The ALJ was not required to incorporate additional limitations he found unsupported by the record. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756-57 (9th Cir 1989).

Although the evidence in this case record could be interpreted differently, in a manner more favorable to McGrew, the court is not free to overturn an ALJ's factual determinations on the basis that "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1193.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision.

DATED this 18* day of October, 2017.

Robert E. Jones
United States District Judge